**Dominick A. FIRMANI, Plaintiff,**

v.

**John H. CLARKE et al., Defendants.**

**Civ. A. No. 3983.**

United States District Court,
D. Delaware.

April 22, 1971.

Irving Morris and Joseph A. Rosenthal, of Cohen, Morris & Rosenthal, Wilmington, Del., for plaintiff.

William Prickett, of Prickett, Ward, Burt & Sanders, Wilmington, Del., and David P. Bruton, of Drinker, Biddle & Reath, Philadelphia, Pa., of counsel, for defendant, John H. Clarke.

E. Dickinson Griffenberg, Jr., of Potter, Anderson & Corroon, Wilmington, Del. and Matthew J. Broderick and Arthur E. Newbold, IV, of Deckert, Price & Rhoads, Philadelphia, Pa., of counsel, for defendant, Elliot L. Goldman.

Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, Del., for defendant, Leonard M. Taylor.

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. and Franklin Poul and Judith R. Cohn, of Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., of counsel, for defendants, Curtis J. Yamas, Gerald J. Wood, John W. Hurley, Reuben Wasserman and C.G.S. Scientific Corporation.

Henry M. Canby and Richard F. Balotti of Richards, Layton & Finger, Wilmington, Del., Donald A. Scott and Frederick B. Henry, of Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel, for defendant, Arthur Andersen & Co.

## OPINION

LATCHUM, District Judge.

This is a purported class action which seeks damages based on the anti-fraud provisions of the federal securities laws. The defendants have moved to transfer the case, pursuant to 28 U.S.C. § 1404 (a), to the United States District Court for the Eastern District of Pennsylvania.

On September 24, 1970, the plaintiff filed a complaint against C.G.S. Scientific Corporation ("C.G.S.") and certain of C.G.S.'s past and present directors.[1] The plaintiff claimed to represent all persons who purchased C.G.S. common shares between April 30, 1970 and September 17, 1970. On December 1, 1970 the complaint was amended (1) to redefine the purported class on behalf of whom the suit was brought to include all persons who purchased C.G.S. common stock between February 1, 1969 and September 17, 1970 and (2) to add Arthur Andersen & Co., Certified Public Accountants for C.G.S., as a defendant.

The amended complaint alleges that C.G.S., the defendant directors and Arthur Andersen & Co. engaged in acts and practices which violated section 10 (b) of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 CFR § 240.10b-5, promulgated thereunder. Specifically the amended complaint alleges the publication of false and misleading information concerning the financial condition of

---

[1]. The named individual defendants are: John H. Clarke, Elliot L. Goldman, John W. Hurley, Raymond F. McHugh, Jr., Leonard M. Taylor, Reuben Wasserman, Gerald J. Wood and Curtis J. Yamas. All of these defendants have moved to transfer, except McHugh, who has not appeared, and Goldman. The corporate defendants, C.G.S. and Arthur Andersen & Co., have also moved to transfer. In addition, all of the appearing individual defendants have moved to dismiss on the ground of improper venue under 15 U.S.C. § 78aa.

C.G.S., contained in C.G.S.'s 1968 annual report issued on September 30, 1968, in two interim operating reports of April 30 and August 5, 1970 and in an oral representation by defendant John H. Clarke in late August or early September, 1970. The complaint further alleges that the false or misleading reports were publicly disseminated by the use of the mails, that they were based upon accounting work of Arthur Andersen & Co., and that they were relied upon to their detriment by the plaintiff and others who purchased C.G.S. stock between February 1, 1969 and September 17, 1970.

C.G.S.'s answer to the amended complaint asserts cross claims against the defendants, Clarke, Goldman and Arthur Andersen & Co., alleging that if there were violations of the securities law, such violations were caused by the failure of these defendants to perform their duties properly with respect to the accounting and bookkeeping practices of C.G.S.

The question presently before the Court is whether this case should be transferred to the Eastern District of Pennsylvania.

A civil action may be transferred under § 1404(a) to another district "where it might have been brought" if the Court, in its discretion, finds the transfer to be "[f]or the convenience of parties and witnesses, [and] in the interest of justice." The Court finds, and indeed it is not disputed, that this action could have been brought in the Eastern District of Pennsylvania under section 27 of the Act, 15 U.S.C. § 78aa. All of the individual defendants, except Wasserman and Hurley,[2] are inhabitants and citizens of that district, C.G.S. and Arthur Andersen & Co. conduct their businesses there, and the primary acts and transactions, alleged in the amended complaint and upon which this suit was brought, occurred in the Eastern District of Pennsylvania.

In weighing the conveniences of the individual parties and witnesses, a choice of a trial site in either Wilmington or Philadelphia would make very little difference with respect to travel distances. The two courthouses are located but thirty miles apart—a mere forty-five or fifty minute trip from door to door. Admittedly, while a trial in Wilmington would be more convenient, relatively speaking, for the *individual* plaintiff who is a local resident, Philadelphia would be more accessible and convenient for most of the defendants and their witnesses, who work and reside in the Philadelphia area. If, however, the convenience to the defendants of a Philadelphia trial as compared with the convenience to the *individual* plaintiff of a Wilmington trial were the only factor to be considered, this Court would probably hesitate to disturb the plaintiff's choice of forum.

But, the plaintiff's choice of a forum becomes substantially less important when he sues representatively on behalf of a class, as the plaintiff has done in this case. Fogel v. Wolfgang, 48 F.R.D. 286, 290 (S.D.N.Y.1969); Schneider v. Sears, 265 F.Supp. 257, 266 (S.D.N.Y.1967); Cf. Koster v. (American) Lumbermens Mutual Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). This is so because in a class action "any stockholder in the affected class who subsequently chooses to appear might be faced with similar inconveniences, depending upon where the actions proceed." Schneider v. Sears, supra, 265 F.Supp. at 263 (footnote omitted). In this connection, it appears that there are 1333 C.G.S. shareholders and of this number 602 (or about 45 per cent) reside in the Eastern District of Pennsylvania, while only 45 stockholders of record (or about 3.3 per cent) reside within this judicial district. Obviously, such a stockholder concentration substantially lessens the significance of the plaintiff's choice of forum here.

2. Wasserman is a citizen of Massachusetts and Hurley is a citizen of New York.

Further, in a class action such as this the testimony offered by the plaintiff is likely to be minimal, probably no more than a recitation of the circumstances under which he purchased his stock. The critical evidence, both testimonial and documentary, to sustain the claims of the complaint must come from other sources, particularly from documents within the defendants' control, all of which are located in the Eastern District of Pennsylvania.

■ Moreover, the center of gravity for the present claims is in the Eastern District since it is (a) the location of C.G.S.'s principal office, (b) the location where the allegedly false reports were prepared, (c) the home of all but two defendants in the case, (d) the location of the pertinent documents and records, (e) the place where more than 45 per cent of its class members reside, (f) the location of the primary market for C.G.S. stock, and (g) the home of most of the C.G.S. employees who have knowledge of the subject matter and who may be called as witnesses.

On balance, in this class action, with respect to convenience of parties and witnesses, the scales are tipped in favor of transfer.

■ More importantly, however, when we turn to the third criterion for transfer, "the interest of justice," a number of significant factors strongly favor a transfer to the Eastern District of Pennsylvania.

On September 16, 1970, C.G.S. released a public statement that the company would report a then unestimated but substantial loss for its fiscal year ended August 31, 1970. The statement continued:

"  *  *  *  the C.G.S. Board has now concluded that the company's previously reported interim results for the six and nine month periods ended Febru-

ary 28 and May 30, 1970 were overstated, although it has not yet been able to determine the extent of the overstatements or the extent, if any, to which the previously reported 1969 results may be affected. The overstatements resulted from a number of actions recently discovered by the Board, including improper record keeping, misallocation of expenses, and overestimates of the extent of completion on contracts in process in the company's Environmental Division." (¶ 3, Ex. A to complaint).

As a result of this public confession, three suits were promptly precipitated. The plaintiff in the present class action won the race to the courthouse. His suit was filed on September 24, 1970. Three other plaintiffs, Alan Bleznak, Edward N. Polisher and Hyman Cooper, following close upon Firmani's heels, filed two substantially similar class actions in the Eastern District of Pennsylvania. Bleznak et al. v. C.G.S., et al., C.A. No. 70–2840, filed October 14, 1970 and Cooper v. C.G.S., et al., C.A. No. 70–3039, filed November 3, 1970. The latter two lawsuits are based upon the same transactions and alleged misrepresentations by C.G.S. as alleged in the amended complaint in the present action.[3]

The *Bleznak* suit is brought on behalf of a class purporting to include all persons who purchased, retained or sold C.G.S. stock since 1968 in reliance on the publication by C.G.S. of alleged misrepresentations of its financial condition, including specifically the 1970 interim operating reports.

The *Cooper* suit is brought on behalf of all holders of common stock of C.G.S. since March, 1968, and alleges violation of the Securities Act of 1933 and the Securities Exchange Act of 1934 based on essentially the same allegedly inac-

3. The same individual defendants named in the present action are named in the *Cooper* suit. The same is true as to the *Bleznak* case, except Hurley is not named as a defendant. Both Philadel-

phia suits join an additional defendant, A. J. Feldman. Arthur Andersen & Co. has been joined in both Philadelphia cases as a third party defendant.

curate and misleading financial reports and representations.

■ Since all three of these suits are "substantially similar" and are based on the same acts and transactions, it is obvious that all of the plaintiffs will be required to prove the same issues, including material misrepresentations, fraudulent conduct, purchases or sales and reliance, probably utilizing the same evidence to establish most of these facts. If possible, duplicative litigation of similar issues in separate fora should be avoided. A strong public policy favors bringing all such litigation together in one tribunal so that pretrial discovery may be conducted more efficiently, witnesses' time may be conserved, public and parties' litigation expenses may be reduced, and inconsistent results can be avoided. Jacobs v. Tenney, 316 F.Supp. 151, 169 (D.Del.1970); Jahncke Service, Inc. v. OKC Corp., 301 F.Supp. 866, 869 (D.Del.1969).

Although the definition of the classes varies in all three actions, the entire class purportedly represented by the plaintiff in the instant suit appears to be within the class of plaintiffs in both actions in the Eastern District. In any event, it would contribute immeasurably to the efficient administration of justice to have a single court define the classes and subclasses as may be necessary so that the issue of liability and damages may proceed with as little confusion and with as much saving of time and effort on everyone's part as can be afforded.

Furthermore, it would be absurd to have rival and competing notices sent out in three separate class actions, all attempting to enforce the same claims, and expect the recipients of such notices to guess which class they should join. Since under Rule 23, F.R.Civ.P., anyone who does not manifest his intention to withdraw from a class is automatically included, it could very well result that those receiving such notices would wind up as plaintiffs in all three lawsuits, a violation of the principle that,

if possible, a particular dispute should be resolved by a single adjudication.

■ While the plaintiff here appears to agree that litigation with identical issues should be brought together in one tribunal as a matter of efficient judicial administration, he questions why his case, which was the first one filed, should be the one transferred. "Winning the race to the courthouse" is not one of the standards to be applied when considering a motion to transfer under § 1404(a). In any event, the Bleznak case was filed only twenty days and the Cooper case only forty days after the present action was instituted. As far as the record shows, all were filed independently of one another and were prompted solely by the C.G.S. public press release made on September 16, 1970. Very little weight, therefore, can be given to the order in which these cases were filed. Apparently the Philadelphia actions, like the present one, have not progressed beyond the initial stage of answers and preliminary motions.

Finally, the plaintiff contends that the present case will be unreasonably delayed by transfer because the calendar of this Court is not as congested as that of the Eastern District of Pennsylvania, at least according to the 1970 report of the Director of the Administrative Office of the United States Courts. This report, however, does not reflect the present calendar conditions. Since that time, the Eastern District has adopted an individual judge calendar and five new district judges have been appointed. In view of this changed situation, it is doubtful that the present case would face any greater delay in the Eastern District than it would face in this Court.

Having weighed all the relevant factors under § 1404(a), the Court concludes that this action should be transferred to the United States District Court for the Eastern District of Pennsylvania, and in view of the transfer, the plaintiff's Rule 23 motion for a definitive declaration of the class should be addressed to the transferee court. In re Plumbing Fixture Cases, 308 F.Supp.

242, 243–244 (Jud.Pan.Mult.Lit. 1970), reaffirming 298 F.Supp. 484, 495–496 (Jud.Pan.Mult.Lit. 1968); Litwin v. Feldman, CCH Sec.L.Rep. ¶ 92,857 (S.D. N.Y.1970). The transfer also eliminates the necessity of this Court passing upon the motions of the individual defendants to dismiss the action for lack of proper venue in this district.

An order will be entered in accordance with this opinion.